■ JOAN A. PROVOST et al., Respondents, v DRISS HASSAM et al., Defendants, and DONALD T. KASPRZAK, Appellant. [681 NYS2d 820] —Carpinello, J. Appeal from that part of an order of the Supreme Court (Dawson, J.), entered October 27, 1997 in

---

Clinton County, which denied defendant Donald T. Kasprzak's motion for summary judgment dismissing the complaint against him.

As a result of concerns about a painful lump in her right breast, plaintiff Joan A. Provost (hereinafter plaintiff) consulted four physicians in a four-week period during early 1991—her general practitioner who felt a lump and ordered a sonogram and mammogram; defendant Driss Hassam, a surgeon who noticed dimpling on the right breast and who, according to plaintiff, felt the lump; her gynecologist; and defendant Donald T. Kasprzak (hereinafter defendant), also a surgeon. Defendant performed a physical examination on February 4, 1991 and, according to plaintiff, felt the lump—a fact which defendant denies. Defendant's impression at the time was that plaintiff suffered from "[m]ild chronic cystic mastitis * * * [but he would] evaluate her mammograms and act accordingly". He ordered a needle localization of the right breast pending evaluation of the mammograms. Although who was responsible for the cancellation is much disputed, it is undisputed that this procedure was ultimately canceled.

Defendant's notes from February 4, 1991 state that he conferred with defendant Herbert J. Koerner, a radiologist, about plaintiff's condition. Specifically, defendant's records contain the following notation: "On my examination today I can find nothing however Dr. Koerner feels that there is something in the right breast on mammographic studies. We will evaluate the mammogram with Dr. Koerner and then act accordingly." Notably, Koerner had performed a sonogram on January 10, 1991 which revealed a "relative hypodense abnormality about 1.2 cms. in size, at 9 o'clock * * * [which did] not have all the criteria of a cyst". A mammogram, which had been performed on January 17, 1991, did not identify any dominant mass "to explain the region of palpable abnormality in the right breast at approximately 9 o'clock". The mammography report notes that "[p]erhaps a significant abnormality could be obscured by adjacent density". A mammogram performed February 27, 1991 disclosed no abnormality. During the spring of 1991, plaintiff saw defendant again because her pain had not diminished; he advised her at this time to apply moist heat to the breast.

After experiencing continued pain, plaintiff was reexamined by defendant in September 1991. A mammogram, performed at her insistence, disclosed a 1.5-centimeter lesion at the 9 o'clock position. The lump was ultimately determined by another physician to be malignant necessitating a partial mastectomy

and radiation. Ensuing complications resulted in a total mastectomy. At issue on appeal is Supreme Court's denial of defendant's motion for summary judgment in this medical malpractice action commenced by plaintiff and her husband, derivatively, against, among others, defendant, Hassam and Koerner.

Noting that plaintiffs, as the nonmoving parties, are entitled to the benefit of every favorable inference which can be drawn from the motion papers (*see, e.g., Shay v Palombaro*, 229 AD2d 697, 700), we are of the view that Supreme Court properly denied summary judgment to defendant. In support of summary judgment, defendant submitted, *inter alia*, plaintiff's medical records, the transcript from his and Koerner's depositions, and his own affidavit in which he averred that his "care and treatment of [plaintiff] was in accordance with good and accepted standards of care in general surgery[ ] and that [his] treatment did not cause her to sustain injury". Even assuming that these submissions were sufficient to make a prima facie showing rebutting plaintiffs' claims of malpractice, we are satisfied, upon our review of the record, that issues of fact have nevertheless been raised precluding summary judgment (*see, Alvarez v Prospect Hosp.*, 68 NY2d 320, 324-325).

First, although defendant claimed in his affidavit that he found no abnormality in plaintiff's right breast during his initial examination, plaintiff's deposition testimony contradicts this claim. According to plaintiff, defendant did in fact feel the lump in her breast and scheduled a needle localization "to make a more definite diagnosis". A diagram on defendant's medical notes depicts a mass or abnormality in the 9 o'clock region of plaintiff's breast.[1]

Defendant argues that he conformed with accepted standards of practice when he relied on the judgment of the radiologist who determined that "there was no distinct area to be localized for biopsy and accordingly canceled the [needle localization] procedure". Defendant, however, admitted that he never actually reviewed plaintiff's condition with the radiologist insofar as the cancellation was concerned; rather, he stated that he received a message from his secretary advising him that the procedure had been canceled. According to plaintiffs' medical expert (a surgeon whose practice is limited to the diagnosis and treatment of breast diseases), defendant's failure to have the right breast biopsied in February 1991 was "a significant departure from good and accepted medical practice and

---

1. Defendant contends that the diagram merely depicts the area of plaintiff's complaint.

unreasonably delayed the diagnosis and treatment of [plaintiff's] condition". Specifically, the expert opined that defendant's willingness to "cancel"[2] this operative procedure "without having personally reviewed the x-rays and discussing the matter fully with the radiologist" was a significant departure from the expected standard of care. He further averred that defendant failed to establish a plan for a timely follow-up examination to rule out an evolving malignancy, which was also a significant departure from the expected standard of care.

Defendant further argues that "[n]othing in my examinations of [plaintiff], the history she presented, or the mammography reports provided by the radiology department indicated that I should have made an earlier attempt to reschedule the localization and biopsy". Significantly, however, plaintiff's "history" included her complaint of a painful lump in her right breast at the 9 o'clock position, evidence (albeit disputed) that defendant felt this lump and the January 10, 1991 sonogram revealing a 1.2-centimeter mass at this precise location. Although defendant testified at his deposition that he was unaware of this sonogram or the January 17, 1991 mammogram, plaintiff testified at her deposition that she told defendant about the mammogram and his own notes refer to a prior mammogram and acknowledge having consulted with Koerner, who performed and read the sonogram. Given the numerous factual questions and contradictions in the record, as well as the averments of plaintiffs' expert—made with specific references to plaintiff's medical records—that defendant "deviated substantially from those standard and accepted procedures related to the diagnosis of breast cancer", Supreme Court did not err in denying defendant's motion for summary judgment (*cf., Schaefer v Marchiano*, 193 AD2d 664; *Kelly v St. Peter's Hospice*, 160 AD2d 1123, 1124-1125; *Conti v Albany Med. Ctr. Hosp.*, 159 AD2d 772, 775, *lv denied* 76 NY2d 702).

Moreover, while defendant averred that plaintiff's "outcome" would have been the same without the delay in identifying the malignancy, plaintiffs' expert opined "within a reasonable degree of medical certainty" that had the cancer been diagnosed in February 1991, plaintiff's tumor would have been much smaller and she would not have suffered metastasis to an aux-

---

**2.** Whether defendant himself or another physician actually canceled the needle localization is irrelevant for the purposes of this motion. We note, however, that plaintiff testified at her deposition that defendant called her the night before the procedure was to take place and told her that, upon consultation with five other doctors, *he* was going to cancel the "biopsy". In any event, the fact remains that defendant scheduled a procedure, the procedure never took place and defendant never rescheduled it.

iliary lymph node. The expert further opined that a timely diagnosis would have increased her chances of long-term survival. Thus, as to causation, we also find that a factual issue has been raised (*cf., Bossio v Fiorillo*, 210 AD2d 836; *Amsler v Verrilli*, 119 AD2d 786, 787).

The parties' remaining contentions and requests have been considered and none has merit.

Cardona, P. J., Peters, Spain and Graffeo, JJ., concur. Ordered that the order is affirmed, with costs.